UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALFORD L. WHITE,

    **Plaintiff,**

    v.                                                                         04-624 (GK/JMF)

**JOHN E. POTTER,**
Postmaster General,
United States Postal Service,

    **Defendant.**

## MEMORANDUM OPINION

This case was referred to me for discovery. Currently pending and ready for resolution is Plaintiff's Second Motion to Compel ("Plains. Mot."). For the reasons stated below, plaintiff's motion will be granted in part and denied in part without prejudice.

## Introduction

This is an action in which the plaintiff complains that he was denied his rights under the Rehabilitation Act and the Age Discrimination Act. Specifically, plaintiff complains that although he was initially given light duty assignments after he injured his back in 1987, in 2000 the Postal Service sent him home and refused to permit him to work until he provided medical documentation to support any additional light duty assignments.

Discovery has been complicated in this case because, as the Postal Service explained, the necessity of eliminating anthrax at the Brentwood mail facility has led to

the destruction of the documents and electronically stored information that plaintiff seeks in the motion currently before me, Plaintiff's Second Motion to Compel.

At the hearing held on the motion on April 10, 2007, the Postal Service also explained that all possible sources of information from which additional information could be secured have been destroyed and the extant computer systems cannot be made to yield what the plaintiff seeks.

Having heard both parties' positions, I am convinced that the case is at a significant crossroads and that what is first required is that the representations of the Postal Service regarding the ineffectiveness or impossibility of additional searching must be documented and attested to by sworn testimony. This will lay a solid foundation upon which the Court can decide whether, as the Postal Service protests, it can do no more than it already has done and whether any present or future demand for evidentiary or other sanctions rests on the most solid evidentiary basis possible.

I begin with an overview of Judge Kessler's order of February 7, 2006.

### The February 7, 2006 Order

By an order dated February 7, 2006, the Court required the Postal Service to provide the plaintiff with (a) documents relating to light-duty employees and limited duty employees at the Brentwood Mail Facility who were denied work or had their hours reduced during the year 2000 and (b) information regarding prior complaints of discrimination against persons named in plaintiff's discovery requests so long as such complaints were lodged between January 1, 1998, and April 19, 2004.

Prior to that order, the Postal Service had filed a sworn statement by Compensation Manager Toni Grier, who indicated that she understood that plaintiff had

2

demanded that the Postal Service identify and provide information concerning "limited or light duty USPS employees at the Brentwood Mail Facility whose OWCP [Office of Workers' Compensation Programs] cases were closed or who were denied work and sent home by the agency during the year 2000." Declaration of Toni Grier, filed Jan. 27, 2006. Ms. Grier then explained that, although she searched for this material, the documents and computer hard drive that would have contained the information were destroyed because the Brentwood facility was contaminated by anthrax,. Id.  As a result, the Postal Service "no longer ha[d] in [its] possession the requested information and there [were] no other means [by] which the information [could] be ascertained." Id.

A week after the Court's order of February 7, 2006, the United States Attorney's office, on behalf of the Postal Service, sent plaintiff's counsel a CD that contained 430 pages of documents.

### The Significance of the CD

Plaintiff first argues that the production of the CD contradicts the representation of Ms. Grier that all documents and the computer hard drive had been destroyed. Plaintiff insists that the Court draw the inference "that there are more documents in existence that have not been accounted for." Plains. Mot. at 6.  The Postal Service answers that far from being evidence of "concealing requested discovery," the production of the CD is evidence of its continued, good faith effort "to search for requested documents that were lost during the chaotic days after the Anthrax scare in 2001." Defendant's Opposition to Plaintiff's Second Motion to Compel ("Defs. Opp.") at 3.  At the hearing, counsel for the Postal Service asserted that the box from which the 430 documents were taken was found by happenstance.

But, a lingering question does remain that is not answered on this record. If Ms. Grier represented that no documents could be found, where were the 430 documents that are on the CD? In my view, and as I have explained, it is imperative that resolution of any such request be premised on the best available record. I will therefore grant the motion to compel to the extent of requiring the Postal Service to file a declaration by its representative explaining how it occurred that the 430 documents were found and whether it is likely that, despite Ms. Grier's representations, additional documents that Judge Kessler ordered produced can or cannot be found.

**The Agency Query System ("AQS") Data Sheets**

Plaintiff seeks what is called an AQS data sheet, a document that will support the Postal Service's claim that his OWCP case was closed as of June 30, 2000. Apparently, there are other AQS data sheets that, according to plaintiff, are inconsistent with the June 30, 2000 closing date. In a footnote, the Postal Service explains that it has not withheld (inter alia) any AQS data sheets for plaintiff for 2000. Defs. Opp. at 3. At the hearing, the Postal Service explained that this footnote means that it does not have any other AQS data sheets and, more significantly, that the computer system used to produce the data sheets was destroyed and there are no backup tapes from which the information can be derived. Thus, the Postal Service says that it is impossible for it to produce any more AQS data sheets, regardless of whether they are consistent with the June 30, 2000, closing date.

As I have done as to the other issues in this case, I will require that the representation by Postal Service's counsel be stated under oath by a representative[1] who

---

[1] By doing so, I do not in any way question the truthfulness of counsel's representations but intend only to preserve the crucial distinction between witness and lawyer.

4

is competent to make such representations. Such individual will state (1) whether any additional AQS data sheets exist from which the information that Judge Kessler ordered to be produced can be derived; (2) whether there is any computer system or backup tapes from which such data sheets could be now derived that would yield AQS data sheets; and (3) whether there is any computer system or backup tapes from which any other output of any kind could be derived that would yield the information that Judge Kessler has ordered produced or would bear on any events that occurred on June 30, 2000 that would relate to or bear upon plaintiff's complaint that plaintiff's OWCP case was closed as of June 30, 2000.

### The CMS and Payroll Systems

It appears from the record developed so far in this case that the Postal Service took action affecting certain employees, including plaintiff, on June 30, 2000. We know that because plaintiff took the 430 documents on the CD and developed a chart that is attached as Exhibit 1 to <u>Plaintiff's Second Motion to Compel</u>. The chart indicates that (1) 44 Postal Service employees were advised that their OWCP cases were closed as of that date and (2) 209 employees were required to provide additional medical documentation within 14 days as required by their June 30, 2000 letters. Additionally, the chart indicates that based on a list apparently created in August 2000, other employees had codes next to their names indicating that they were "Rehab" or "Limited Duty." Plains. Mot. at 9.

Plaintiff then points to the deposition of Genevieve E. Rodriguez, Postal Service Human Resources Manager in 2000-2001, in which she references a Postal Service database, called the Complement Management System ("CMS"), and a related Payroll System. <u>Id.</u> at 10. Plaintiff asks that the Postal Service first be required to use the CMS

system to find those persons who had been placed in a code 68 or code 69 status and notes that they should be the same persons on the lists the plaintiff generated from the 430 documents. Once that is done, the Postal Service, according to plaintiff, can check that list against the payroll system and find the persons who were placed in the 68 or 69 category and thus were no longer paid or had their hours reduced. According to plaintiff, this would generate a list of persons who were denied work or had their hours reduced during the year 2000, thus satisfying Judge Kessler's order.

The Postal Service, however, has produced a declaration from Juanita Smallwood, who explains that the CMS system "does not provide information on time keeping information which relate[s] to specific reasons why an employee took leave, had their hours reduced or was otherwise in a leave without pay status." Defs. Opp., Declaration of Juanita Smallwood. She adds further that the "system cannot provide cannot provide an accounting of employees who went off the payroll or had their hours reduced after June 30, 2000." Id.

Ms. Smallwood's declaration does leave one loose end—can, as plaintiff claims, the payroll system be used to find those employees in the 68 or 69 category, including those on the plaintiff's list, who suffered either a loss of work or a reduction of hours in 2000? The Postal Service shall have Ms. Smallwood supplement her declaration to answer that question. In that declaration, she must also indicate whether there is any other accessible computer system anywhere in the entire Postal Service from which this information can be derived.

An Order accompanies this Memorandum Opinion.

                                      \_\_\_/s/_____
**JOHN M. FACCIOLA**
**UNITED STATES MAGISTRATE JUDGE**

Date:  April 24, 2007